IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BUSH SEISMIC TECHNOLOGIES LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 2:14-cv-1809-JRG |
| v. | § | |
| | § | |
| AMERICAN GEM SOCIETY, ET AL. | § | |
| | § | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Global Geophysical Services, Inc.'s ("Global") Motion to Transfer Venue (Dkt. No. 11, "Mot."). Having considered the same, and for the following reasons, Defendant's Motion is **DENIED**.

## BACKGROUND

Global is a Houston, Texas company that provides an integrated suite of seismic data solutions to the oil and gas industry. On March, 25, 2014, Global filed for Chapter 11 bankruptcy protection. *See In re Global Geophysical Services Inc.*, Case No. 14-20131, Dkt. No. 1 (Bankr. S.D. Tex. Mar. 25, 2015, consolidated with *Autoseis, Inc.*, Case No. 14-20130, Dkt. No. 75 (Bankr. S.D. Tex. Mar. 28, 2014) (hereinafter "Global Bankr."). Global's Chapter 11 reorganization plan (the "Plan") was confirmed on February 6, 2015. Global Bankr., Dkt. No. 987. Consistent with the "fresh start" goal of bankruptcy, the Plan serves as "judicial determination of discharge of all Claims and Equity Interests" prior to February 6, 2015 ("Effective Date"). *Id.*, Ex. A § 12.3. To enforce Global's "fresh start," the Plan permanently enjoins all entities from commencing or continuing any causes of action against Global for claims arising prior to the Effective Date. *Id.* § 12.8. The Plan neither covers nor provides

protection from claims arising after its Effective Date.

On November 23, 2015, Plaintiff Bush Seismic Technologies LLC ("Bush") filed the present case, alleging that Global "has and continues to directly infringe one or more claims of [U.S. Patent No. 6,236,942]." (Compl. ¶ 16). Global seeks to transfer the case to the United States Bankruptcy Court for the Southern District of Texas under 28 U.S.C. § 1412 or, alternatively, to the District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1404(a). (Mot. at 1). Global principally alleges that the patent infringement claims require interpretation of the Bankruptcy Court's confirmation order. (*Id.* at 3). This Court disagrees.

## LEGAL STANDARD

"[A] district court may transfer any civil action to any other district or division where it might have been brought" for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). Thus, the first inquiry when analyzing a transfer under section 1404(a) is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) (hereinafter *In re Volkswagen I*).

Once that threshold inquiry is met, the district court must then consider the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1197–98 (Fed. Cir. 2009). The party seeking transfer must show good cause, which means that the moving party must demonstrate that the proposed transferee venue is "clearly more convenient than the venue chosen by the plaintiff[.]" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (hereinafter *In re Volkswagen II*). A convenience

determination consists of balancing the convenience and inconvenience resulting from plaintiff's choice of venue in comparison with those of the proposed venue. This balancing includes examining several private and public interest factors, none of which has dispositive weight. *Id.* The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen II*, 545 F.3d at 314–15 & n.10. Rather, the weight to be afforded to the plaintiff's choice of venue is reflected in the moving party's substantial burden of proving that the proposed venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 315.

The bankruptcy change of venue provision provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The same general analysis applies to

transferes under § 1404(a) and § 1412. *City of Liberal v. Trailmobile Corp.*, 316 B.R. 358, 362 (D. Kan. 2004) (noting that the only difference in analysis under sections 1412 and 1404(a) is the requirement under section 1404(a) that a case may only be transferred to a place where venue could have originally been brought); *In re Emerson Radio Corp.*, 52 F.3d 50, 55 (3d Cir. 1995) (holding that the decision to transfer venue under either section 1404(a) or section 1412 turns on the same issues). However, section 1412 explicitly requires a case or proceeding to be under Chapter 11 of the Bankruptcy Code.

## ANALYSIS

### A. Section 1412

Global's motion to transfer this case to the Bankruptcy Court for the Southern District of Texas is premised on a fundamental misunderstanding of the scope of Bush's infringement claims. Global asserts that "[t]he crux of Bush Seismic's complaint involves claims that were discharged in Global's bankruptcy pursuant to the Confirmation Order." (Mot. at 2–3). Yet Bush makes clear that this case does not involve discharged claims:

> There is no dispute here that Global filed for Chapter 11 bankruptcy protection on March 25, 2014. There is also do dispute that Global's reorganization plan was confirmed on February 6, 2015. Bush is not asserting any claim arising prior to the date Global emerged from Chapter 11 bankruptcy protection.

(Dkt. No. 28; "Response" at 5). Far from the "ultimate issue in this case," interpretation and implementation of the bankruptcy plan and confirmation order is both unnecessary and irrelevant. (Mot. at 7). Since Bush is not seeking damages arising from Global's pre-confirmation actions, the bankruptcy court has no jurisdiction over this matter. Transferring a patent infringement case to a bankruptcy court to resolve an issue which post-dates the plan's confirmation and fresh start date would be nonsensical and a waste of judicial resources. Accordingly, the Court concludes there is no basis to transfer this case to the Bankruptcy Court

for the Southern District of Texas under section 1412.

**B. Section 1404(a)**

Having apparently realized for the first time that Bush does not seek recovery for Global's pre-confirmation infringement, Global's reply brief alternatively adds a plea for transfer to the District Court for the Southern District of Texas under. (Dkt. No. 35, "Reply"). However, in less than three pages, Global's analysis lacks specific facts which demonstrate that such a transfer to the proposed venue is "clearly more convenient than the venue chosen by the plaintiff[.]" *Volkswagen II*, 545 F.3d at 315. Allegations that are nothing more than conclusory statements without specific supporting facts are not adequate to satisfy a movant's "significant burden" of *clearly* more convenient under section 1404(a). *See id.* at 315 n.10. Nonetheless, in endeavoring to be thorough in its analysis, the Court next moves to consider the relevant convenience factors.

**1. Private Interest Factors**

**a. The Relative Ease of Access to Sources of Proof**

The first of the private interest factors to be considered is the relative ease of access to sources of proof. Despite technological advances that undoubtedly lighten the relative inconvenience of transporting large amounts of (digitized as opposed to hard-copies of) documents across the country, this factor must still be considered in the transfer analysis. *Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous.").

This factor turns upon which party—usually the accused infringer—will most probably have the greater volume of documents relevant to the litigation and the presumed location of

these documents in relation to the proposed and transferor venues. *See, e.g., In re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

Global has approximately 200 employees and five offices within the United States: Missouri City, Texas; Carrolton, Texas; Dallas, Texas; Denver, Colorado; and Anchorage, Alaska. (Dkt. No. 35-1; "Burnett Decl." ¶¶ 7–8). Seventy employees work in the corporate headquarters near Houston and five reside in the Eastern District of Texas. (*Id.* ¶ 9). While Global asserts that "central documents" are located in its headquarters, it fails to identify with any degree of particularity the volume or category of relevant documents located in any of its other offices. This omission is particularly troubling in light of the fact that two of its offices are located in or near Dallas, which is closer to Marshall than the proposed forum. Moreover, Global fails to disclose whether its five employees who reside within this district have personal knowledge relevant to this case. *See Optimum Power Solutions LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 701 (E.D. Tex. 2011) ("All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in the case or the likelihood of being called to testify at trial."). By describing the sources of proof located within the Southern District of Texas *merely globally* while failing to even address the sources of proof in or near this district, Global has failed to meet its burden. The Court finds that this factor weighs against transfer.

**2. Availability of Compulsory Process to Secure the Attendance of Witnesses**

The Court may command a person who "resides, is employed, or regularly transacts business in person" in Texas to attend trial in Marshall if he or she "would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). The Court also may command a person to attend a deposition at a location "within 100 miles of where the person resides, is employed, or regularly

transacts business in person." Fed. R. Civ. P. 45 (a)(2); *see id.* (c)(1)(A), (d)(3)(a). Party witnesses normally do not require compulsory process.

Global fails to even identify a single third-party witness, let alone indicate whether or not they were subject to the Court's subpoena power. Instead, Global attempts to impermissibly shift the burden to the non-movant by arguing that "Plaintiff did not assert that any witnesses at all are located within the Eastern District of Texas or even alleged that any such witnesses exist." (Reply at 2). This burden falls squarely on Global not Bush. As Global has failed to identify any potential third-party witnesses, this factor weighs against transfer.

### 3. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d at 1342. In assessing this factor, the Court considers the convenience of both party and non-party witnesses. The convenience of non-party witnesses carries the greater weight in the analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3851 (3d ed. 2012). "A district court should [also] assess the relevance and materiality of the information the witness may provide" but should not require the movant to show "that the potential witness has more than relevant and material information . . . ." *In re Genentech*, 566 at 1343–44.

Global argues that "relevant employees and potential witnesses are located primarily in the Southern District of Texas. (Reply at 3). Yet, as with the first two factors, Global fails to identify such employees and witnesses in a specific manner. In fact, Global fails to even identify a single third-party witness at all. Moreover, Global fails to describe the "relevance and materiality of the information" that any potential witness may provide. *See In re Genentech*, 566

7

at 1343–44. The mere fact that Marshall is farther from Global's headquarters than Houston—by itself—does not establish that the convenience of willing witnesses weighs in favor of transfer. Accordingly, this factor is either neutral (without any relevant employees or third party witnesses being identified with particularity) or not a factor at all.

### 4. Other Practical Problems

The only practical problem that Global identifies is that "bankruptcy law changes the landscape of this case." (Reply at 3). As discussed above, there is no disputed issue of bankruptcy law. The parties agree that Bush cannot recover damages for Global's alleged pre-confirmation infringement. (Resp. at 5). This is a non-bankruptcy landscape which has not changed. The Court concludes that there are no practical problems that weigh in favor of transfer.

## C. Public Interest Factors

### 1. Administrative Difficulties Flowing from Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech*, 566 F.3d at 1347. This factor appears to be the most speculative and, on its own, should not outweigh other factors. *Id*. Global declines to address this factor. Accordingly, though this factor has little impact on the Court's analysis, it cannot weigh in favor of transfer.

### 2. Local Interest in Having Localized Interests Decided at Home

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947); *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes

the "factual connection" that a case has with both the proposed and transferor venues. *See In re Volkswagen I*, 371 F.3d at 206.

Global argues that this Court lacks a local interest in this case because "neither party in this case has a connection to the Eastern District of Texas apart from this lawsuit." (Reply at 4). Bush argues that "Global has a presence in the Eastern District of Texas, having obtained a library of seismic data from oil and gas fields located in this district," and that Global offers "services that incorporate this seismic data to generate predictions of hydrocarbon locations— activity that is squarely at issue in this matter." (Resp. at 10).

The Court finds that this factor weighs in favor of transfer. The Southern District of Texas has a local interest in this case because this case "calls into question the work and reputation" of Global and its employees. *See In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). Though Bush alleges that Global has significant ties to this District, it fails to provide any detailed evidence to substantiate those ties. The fact that Global may possess seismic data concerning oil and gas fields in East Texas does not amount to a strong "factual connection" for the purposes of venue. *See In re Volkswagen I*, 371 F.3d at 206.

### 3. Familiarity of the Forum with the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflicts of Laws

Aside from contending that the Southern District of Texas is more familiar with bankruptcy law—which is not at issue in this case—Global makes no argument concerning the remaining public interest factors. The Court finds that such factors are neutral.

### D. The Balance of Factors Weighs Against Transfer

After weighing all of the evidence, the Court finds that this case should remain in the Eastern District of Texas. A motion to transfer venue should only be granted if the moving party can show that the transferee venue is "clearly more convenient" than the transferor venue. *In re*

9

*Nintendo*, 589 F.3d at 1197; *In re Genentech*, 566 F.3d at 1342. Only one factor weighs in favor of transfer, with the rest either weighing against transfer, neutral, or having no application to this case. Global bears the burden of proving that the Southern District of Texas is *clearly* more convenient than the Eastern District of Texas. Global failed to meet that burden.

## CONCLUSION

For the reasons set forth above, Global's Motion to Transfer Venue (Dkt. No. 11) is **DENIED**.

**So ORDERED and SIGNED this 14th day of April, 2016.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE